1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Jarmel J. Kennedy,                    )   No. CV 04-1845-PHX-MHM
                                          )
10               Plaintiff,               )   **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    John E. Potter, Postmaster General, United)
13  States Postal Service,                )
                                          )
14               Defendant.               )
                                          )
15                                        )
                                          )
16  _____

17

18          Presently pending before the Court is Defendant United States Postal Service's Motion

19  for Summary Judgment (Doc. 46).  Plaintiff Jarmel J. Kennedy has filed a Response (Doc.

20  44) and Defendant has filed a Reply (Doc. 46).  Both parties have filed Statements of Facts

21  (Docs. 43 & 45).  Finding oral argument unnecessary, the Court considers the arguments

    presented in the submitted papers and issues the following Order.
22
                                    BACKGROUND
23
            Plaintiff Jarmel J. Kennedy (Plaintiff or "J.J.") is an African American male who
24
    began working for the United States Post Service ("USPS") on or about July 6, 1985.
25
    Pursuant to a work-related shoulder impairment diagnosed on or about March 26, 1996,
26
    which restricted Plaintiff from lifting over fifty pounds and limited the frequency with which
27
    Plaintiff could lift over his head, the USPS provided Plaintiff with a modified Custodial
28

1   Laborer ("custodian") position at the Phoenix Processing and Distribution Center ("PPDC").

2   As a general rule, a custodian is under strict instructions to be physically present in his work

3   area at all times during his work shift unless he is on a break or is otherwise directed or

4   authorized by a supervisor.

5        Throughout his employment with the USPS, Plaintiff worked under a number of

6   supervisors.  Specifically, Plaintiff worked under Supervisors Michael P. Sullivan, Dennis

7   Barber, Jan McCabe, Leonard Henderson, Albert Knies, Brian Cornelius and Kathy Hom.

8        According to the Plaintiff, he was found to have biplantar facitis foot condition.

9   Because of this condition, Plaintiff had an agreement with Supervisor Henderson that

10  Plaintiff was permitted to sit and put his feet up if they were bothering him.  Their agreement

11  was that Plaintiff was authorized to leave the workroom floor for a period not to exceed one

12  hour.  If the condition necessitated Plaintiff to break for longer than an hour, Plaintiff was

13  directed to take sick leave and go home.  The location for such breaks is disputed.  Plaintiff

14  states that the location had not been specified in his agreement with Mr. Henderson.  Mr.

15  Henderson, on the other hand, states that he directed Plaintiff to take such breaks in the

16  cafeteria.

17  Plaintiff asserts that documentation of his foot condition was attached to his "Department of

18  Labor Agreement."   Despite Plaintiff's agreement with Mr. Henderson, and the

19  documentation Plaintiff asserts was attached to his "Department of Labor Agreement,"

20  Mssrs. Barber and Sullivan have stated that they were unaware that Plaintiff had a foot

21  condition.

22        Plaintiff alleges that he was unfairly targeted for discipline pursuant to an incident that

23  took place in late April or May 2000.  Plaintiff was disciplined for being "sequestered" in a

24  custodial closet after Mr. Barber witnessed Plaintiff's coworker Melissa Lengele retrieve

25  Plaintiff from the closet.  Plaintiff reasoned that he put his feet up in the custodial closet

26  rather than in the cafeteria or somewhere else because it upset some of his coworkers when

27  they saw him in the cafeteria with his feet up.  After receiving comments from his coworkers

28

1  about these breaks, Plaintiff began going to the custodial closet for his "off-his-feet" breaks.

2  However, after Mr. Barber witnessed Ms. Lengele  retrieve Plaintiff from the custodial

3  closet, Plaintiff was issued a formal letter of warning for this conduct.

4        Plaintiff also was disciplined following an incident in September 2000 when he and

5  two non-African American custodians, Claude Martin and Kevin Bauzo, were disciplined

6  for taking an untimely and unauthorized lunch break.  Custodians Mssrs. Martin and Bauzo

7  received letters of warning for the infraction, whereas Plaintiff received a seven-day

8  suspension.  Mssrs. Martin and Bauzo's letters of warning were subsequently reduced and

9  dismissed for, *inter alia*, untimely issuance (approximately forty days after the incident).

10  Plaintiff's suspension was similarly reduced – to a letter of warning – for the same reason.

11        On one occasion, Supervisor Hom made a racial comment to Plaintiff.  It happened

12  when Ms. Hom was on the telephone with another manager discussing a third person in

13  Plaintiff's presence.  Ms. Hom stated, "And she's trying to tell me what to do, and she's not

14  my manager.  What color is my skin?"  Then Ms. Hom turned to the Plaintiff and said, "Oh,

15  sorry J.J." (addressing Plaintiff).

16        On another occasion, Supervisor Cornelius stated to group leader Dave Rahn, "I want

17  that black mother fucker out of my area."  Mr. Cornelius was referring to Plaintiff.  His

18  comment followed Plaintiff's attempt to raise awareness that employees should not breathe

19  the cleaning agent chlorine their entire eight-hour shift.

20        Plaintiff was friends with his coworker Ms. Lengele, who is Caucasian.  Plaintiff

21  asserts that their relationship was scrutinized by supervisors more extensively than other

22  relationships that he or Ms. Lengele had with their coworkers.  In fact, Plaintiff provides

23  evidence that management asked other coworkers questions about Plaintiff's relationship with

24  Ms. Lengele and directed team leaders to schedule Plaintiff and Ms. Lengele in different

25  areas during their shifts to reduce their ability to interact.

26        Plaintiff has asserted two claims under Title VII, one for disparate treatment based on

27  race and the other for hostile work environment based on race.  Plaintiff concedes that his

28

- 3 -

1  racial discrimination claim pursuant to 42 U.S.C. § 1981 should be dismissed since such a

2  claim is untenable against the United States Postal Service.  See Brown v. General Services

3  Administration, 425 U.S. 820, 827 n.8 (1976) ("sovereign immunity would, of course, also

4  bar claims against federal agencies for damages . . . brought under the Civil Rights Act of

5  1866, as amended, 42 U.S.C. § 1981").

6                                         LEGAL STANDARD

7          Summary judgment is properly granted when no genuine and disputed issues of

8  material fact remain, and when, viewing the evidence most favorably to the non-moving

9  party, the movant is clearly entitled to prevail as a matter of law.  Fed.R.Civ.P. 56; Celotex

10 Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Eisenberg

11 v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.1987).

12         Initially, the moving party bears the burden of showing that there is no material factual

13 dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported

14 by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d

15 at 1289.  The court must draw all reasonable inferences in favor of the party against whom

16 summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

17 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Intel Corp. v. Hartford Accident & Indem.

18 Co., 952 F.2d 1551, 1558 (9th Cir.1991).

19         The burden then shifts to the non-movant to establish the existence of material fact.

20 Celotex, 477 U.S. at 323, 106 S.Ct. 2548.  The non-movant "must do more than simply show

21 that there is some metaphysical doubt as to the material facts" by "com[ing] forward with

22 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at

23 586-87, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)).

24         A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could

25 return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

26 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The non-movant's bare assertions, standing

27

28                                                 - 4 -

1  alone, are insufficient to create a material issue of fact and defeat a motion for summary

2  judgment. <u>Id.</u> at 247-48, 106 S.Ct. 2505.

3                                          DISCUSSION

4          Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it illegal

5  for an employer "to discriminate against any individual with respect to his compensation,

6  terms, conditions, or privileges of employment, because of such individual's race, color . .

7  . or national origin." 42 U.S.C. S 2000e-2(a)(1).  Plaintiff has alleged two causes of action

8  pursuant to Title VII.  Plaintiff's causes of action are as follows: (1) disparate treatment

9  compared to other employees outside of Plaintiff's protected class, and (2) hostile work

10 environment, which Plaintiff was subject to harassment because of his race.

11 A.     DISPARATE TREATMENT BASED ON RACE

12         To establish a *prima facie* case of disparate treatment under Title VII, Plaintiff must

13 show the following: (1) he belongs to a protected class; (2) he was qualified for the position;

14 (3) he was subjected to an adverse employment action; and (4) similarly situated non-African

15 American employees were treated more favorably.  <u>McDonnell Douglas Corp. v. Green</u>, 411

16 U.S. 792, 802 (1973).  The Ninth Circuit has explained that under the <u>McDonnell Douglas</u>

17 framework, "the requisite degree of proof necessary to establish a *prima facie* case for Title

18 VII on summary judgment is minimal and does not even need to rise to the level of a

19 preponderance of the evidence." <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994);

20 <u>see also</u> <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998).

21         If the plaintiff succeeds in establishing a *prima facie* case, the burden of production

22 shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the

23 plaintiff's employment.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the defendant does so, the

24 plaintiff then must demonstrate that the defendant's articulated reason is a pretext for

25 unlawful discrimination by "'either directly persuading the court that a discriminatory reason

26 more likely motivated the employer or indirectly by showing that the employer's proffered

27 explanation is unworthy of credence.'" <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1124

28                                            - 5 -

(9th Cir. 2000) (quoting Tex. Dep't of Cmty. Affairs, 450 U.S. at 256).   However, the plaintiff's evidence must be both specific and substantial to overcome the legitimate reasons put forth by the defendant.   E.g., Bergene v. Salt River Project Improvement & Power Dist., 272 F.3d 1136, 1143 (9th Cir. 2001); Godwin, 150 F.3d at 1221; Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).

If the plaintiff demonstrates pretext, then the burden-shifting framework disappears, and the only remaining issue is "'discrimination vel non.'"   Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quoting U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).   While the burden of production may shift throughout the analysis, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."   Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Defendant does not dispute that (1) Plaintiff's status is protected as an African American; (2) that Plaintiff was qualified for his position as a custodian; nor (3) that Plaintiff was subjected to adverse employment actions.   Defendant does argue, however, that Plaintiff cannot prove the fourth element for a *prima facie* case of disparate treatment – that similarly situated non-African American employees were treated more favorably than Plaintiff was treated.

Plaintiff provides evidence of a number of instances in which he was treated less favorably than his coworkers.   For example, Plaintiff alleges that he was unfairly targeted for discipline for an incident that took place around May 2000 in which Ms. Lengele was seen retrieving Plaintiff from a custodial closet.   Following this incident, Plaintiff's supervisor issued a formal letter of warning to Plaintiff for leaving his designated work area during his shift.   However, Plaintiff has asserted that he was putting up his feet to alleviate pain caused by his biplantar facitis foot condition and that he had permission from Supervisor Henderson to do this.

Another incident occurred approximately four months later in September 2000 when Plaintiff and two non-African American custodians, Claude Martin and Kevin Bauzo, were disciplined for taking an untimely and unauthorized lunch break. Custodians Mssrs. Martin and Bauzo received letters of warning for the infraction, whereas Plaintiff received a seven-day suspension. Mssrs. Martin and Bauzo's letters of warning were subsequently reduced and dismissed for, *inter alia*, untimely issuance (approximately forty days after the incident). Plaintiff's suspension was similarly reduced – to a letter of warning – for the same reason but Defendant contends that it was not dismissed entirely because Plaintiff had a prior discipline on his record for similar infractions.

"As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves." U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n.3 (1983). Plaintiff states that he was "subjected to excessive monitoring, targeting and disciplining by managers on the workroom floor." Defendant argues that whether Plaintiff was monitored more or less than other custodians, such monitoring was because Plaintiff was not fulfilling his custodial duties nor was he satisfactorily complying with his supervisor's orders, not because he was African American.

However, Plaintiff asserts that he was subjected to disparate treatment by his supervisors and that this disparate treatment "coincided with direct evidence of racist language by Plaintiff's supervisor." Plaintiff also asserts that circumstantial evidence exists to show that his supervisors discriminated against him because of his race. A number of examples exist directly implicating that Plaintiff was treated differently based on his race. The first instance took place when Plaintiff's Supervisor Kathy Hom made a racial comment to Plaintiff. It happened when Ms Hom was on the telephone in the Plaintiff's presence. Ms. Hom was on the telephone with another manager and was talking about a third manager. Ms. Hom stated, "And she's trying to tell me what to do, and she's not my manager. What color is my skin?" Then Ms. Hom turned to the Plaintiff and said, "Oh, sorry J.J." (addressing

Plaintiff).  The second instance was when in response to Plaintiff raising awareness that employees should not breathe chlorine during their entire eight-hour shift, Supervisor Brian Cornelius stated to group leader Dave Rahn, "I want that black mother fucker out of my area."[1]

Plaintiff also alleges that his friendship with Ms. Lengele, who is Caucasian, was scrutinized more than other friendships he or Ms. Lengele had with other coworkers. Plaintiff provides evidence to show that management asked around about his relationship with Ms. Lengele and even directed to schedule Plaintiff and Ms. Lengele in different areas to reduce their ability to interact.  Plaintiff asserts that this scrutiny was because their friendship was interracial.

Plaintiff provides another example of the scrutiny to which his friendship with Ms. Lengele was subjected.  On one occasion, Plaintiff's coworker Mr. Bauzo was drinking soda and reading the newspaper in a break room outside of his designated work area.  When Mr. Barber reported Mr. Bauzo's infractions to Mr. Hernandez, Mr. Hernandez stated that he was not worried about Mr. Bauzo's activity but was more interested in what was going on between Plaintiff and Ms. Lengele.

As stated above, to prove a *prima facie* case of disparate treatment under Title VII requires a minimal amount of evidence, which need not rise to a preponderance of the evidence.  <u>Wallis</u>, 26 F.3d at 889.  Plaintiff has shown more than the minimal amount of evidence required to demonstrate a *prima facie* case that he was treated differently than his coworkers, and that other employees outside Plaintiff's protected class were treated more favorably than Plaintiff was treated.

---

[1] Defendant contends that the Court should not give much weight to these incidents of verbal racial disparate treatment.  Defendant argues that in the first instance Ms. Hom immediately apologized for the inappropriate comment and the second instance was an isolated incident and not an indication of disparate treatment based on race.  However, the Court is not persuaded by Defendant's contentions.

Next, the burden of production shifts to the Defendant to show a legitimate, nondiscriminatory reason for terminating the Plaintiff. <u>McDonnell Douglas</u>, 411 U.S. at 802. Defendant has asserted that even if Plaintiff was treated differently than his non-African American coworkers, Plaintiff's treatment was due to his disregard for USPS rules and direct orders from his superiors. Defendant points to an incident in March 2000 when Plaintiff was spoken to by his supervisor for leaving the postal facility without punching himself off the time clock in violation of USPS rules and regulations. Defendant asserts that this rule is based on a risk management assessment and applies throughout the Postal Service. Moreover, Plaintiff was informed that he could not continue the practice but he was not disciplined for the act.

Again, Plaintiff was formally disciplined for an incident that took place on or about April 28, 2000 when Ms. Lengele retrieved Plaintiff from a custodial closet for lunch. It is disputed whether Plaintiff was sleeping in the closet. At any rate, Plaintiff contends that he should not have been disciplined for this incident because he had permission from Mr. Hernandez to put his feet up when they were hurting him. There is no evidence that a non-African American coworker was found passing time in a custodial closet. However, Plaintiff's warning letter can be explained by the strict rules requiring employees to be physically present in his work area at all times during his shift hours unless he is on a break or is otherwise directed by a supervisor. Defendant states that the incident involving Plaintiff and Mssrs. Martin and Bauzo being disciplined differently for the same act is easily explained and is not related to Plaintiff's race. Defendant rationalizes that the distinction between Mssrs. Martin and Bauzo receiving warning letters that were subsequently dismissed and Plaintiff receiving a suspension that was reduced to a warning letter is that Plaintiff had a prior discipline on his record for similar infractions. Thus, it was warranted to discipline Plaintiff more than Mssrs. Martin and Bauzo. Defendant contends that this examples does not show disparate treatment by the USPS toward Plaintiff.

Defendant has shown a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  Thus, the burden shifts back to the Plaintiff to demonstrate that Defendant's articulated reason is a pretext for unlawful discrimination.  <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d at 1124.  To establish pretext, and avoid summary judgment, Plaintiff must show "specific and substantial" evidence that (1) unlawful discrimination more likely motivated the employer than its proffered legitimate reasons, or (2) the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable.  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220-22 (9th Cir. 1998).  But a reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 515 (1993).  However, a plaintiff is not required to produce additional, independent evidence of discrimination at the pretext stage if the *prima facie* case raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.  <u>Chuang</u>, 225 F.3d at 1127.  The issue at this stage of the summary judgment proceedings is whether Plaintiff has demonstrated the existence of evidence to create a genuine issue of material fact as to whether the reasons proffered by Defendant for terminating his employment were a pretext for discrimination.

Plaintiff has submitted numerous letters from coworkers stating that management was targeting Plaintiff.  These letters state that it was becoming harder for Plaintiff's coworkers to get their work done when Plaintiff was around because Plaintiff's presence meant that management also would be around scrutinizing people's activities generally and specifically trying to find fault with Plaintiff's work.  These coworkers' letters state that when Plaintiff was not at work or was working in a different section, the management would not "even patrol the workroom floor."  In her letter, Ms. Lengele states that Mr. Sullivan told her that "J.J. is going down and he's going to take you down with him."

These letters, along with the evidence discussed above in Plaintiff's *prima facie* showing are sufficient to establish a genuine issue of material fact as to whether Defendant's

1   actions were a pretext for discrimination.  Consequently, Defendant's Motion for Summary

2   Judgment of Plaintiff's claim for disparate treatment is denied.

3   B.       HOSTILE WORK ENVIRONMENT

4           To have a valid hostile work environment claim requires "[c]onduct . . . severe or

5   pervasive enough to create an objectively hostile or abusive work environment . . . ."  Oncale

6   v. Sundowner Offshore Servs., Inc. 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

7   See also Motero v. AGCO Corp., 192 F.3d 856, 960 (9th Cir. 1999).  "An employer is liable

8   under Title VII for conduct giving rise to a hostile environment where the employee proves

9   (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this

10  conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter

11  the conditions of the victim's employment and create an abusive working environment."

12  Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999) (citing Meritor Savings

13  Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); Fred Meyer, Inc. v. Bureau of Labor & Indus.,

14  152 Or.App. 302, 307, 954 P.2d 804, 807 (1998); Mains v. II Morrow, Inc., 128 Or.App.

15  625, 635, 877 P.2d 88, 93 (1994)).

16          To prove a hostile work environment claim which is not based on sexual harassment,

17  a plaintiff must show that the workplace was "permeated with 'discriminatory intimidation,

18  ridicule, and insult. . . .'"  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citing Meritor

19  Savings Bank 477 U.S. at 65).  Whether a work environment is sufficiently hostile or abusive

20  depends upon "'all the circumstances,' including the 'frequency of the discriminatory conduct;

21  its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

22  and whether it unreasonably interferes with an employee's work performance.'"  Nichols v.

23  Azteca Restaurant Enterprises, Inc., 256 F3d 864, 872 (2001), quoting Harris, 510 U.S. at 23.

24          In determining whether the conduct was sufficiently severe or pervasive, Plaintiff

25  must prove both that he subjectively felt the conduct was abusive and that a reasonable

26  person with the same fundamental characteristics would feel that the conduct was abusive.

27  Harris, 510 U.S. at 21-22.

28

Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  The objectively reasonable person standard is measured by what a reasonable woman would have considered abusive. Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991). The required level of severity "varies inversely with the pervasiveness or frequency of the conduct." Id. at 878.  "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" Nichols, 256 F3d at 872, quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . , and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Oncale, 523 U.S. at 82.

Plaintiff alleges that he was subjected to severe and pervasive harassment.  As detailed in the discussion of Plaintiff's disparate treatment cause of action above, Plaintiff has provided a number of examples of verbal and physical conduct directed toward Plaintiff that was harassing in nature.  Plaintiff filed an EEOC claim, which demonstrates that the treatment he received from supervisors was unwelcome.

Moreover, Plaintiff was subjected to constant scrutiny by management, thereby altering the workplace environment.  Plaintiff's coworkers wrote letters stating that the work environment was uncomfortable for everyone when Plaintiff was around because if Plaintiff was present, management also would be in the area closely scrutinizing everyone's work. Coworkers distinguished that when Plaintiff was not present, management would rarely visit the workroom floor.  Plaintiff's coworkers also stated that on a number of occasions over the course of the last year of Plaintiff's employ at USPS,  Mr. Sullivan held meetings to discuss additional restrictions management was imposing on the crew.  Coincidentally, these meetings occurred on days when Plaintiff was not working and he was the only crew member not in attendance.  Mr. Sullivan stated that the person causing the new restrictions isn't here

today. Plaintiff asserts that Mr. Sullivan's comments were made in an effort to drive a wedge between Plaintiff and the rest of the crew. Plaintiff has shown not only that he was the target of hostility and a discriminatory environment caused by management's direct actions towards him, but also that management acted in a way so as to initiate ridicule and hostility toward Plaintiff from his coworkers.

Plaintiff further contends that managerial inquiries into his relationship with his Caucasion coworker Ms. Lengele established a hostile environment. Defendant argues that the postal management talked with Ms. Lengele to warn her that she would be subject to future discipline if she continued her efforts to assist Plaintiff in avoiding work.

Defendant argues that two instances Plaintiff references in his hostility claim occurred after Plaintiff filed his April 1, 2001 Equal Employment Opportunity Commission ("EEOC") complaint and, therefore, they should be stricken from the complaint. The court has jurisdiction over charges of discrimination that either (1) are "like or reasonably related to" or (2) could reasonably be expected to grow out of the EEOC charge. See Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir.1990). The first instance that Defendant advocates striking is when Plaintiff's Supervisor Kathy Hom made a racial comment to Plaintiff. It happened when Ms Hom was on the telephone in the Plaintiff's presence. Ms. Hom stated, "And she's trying to tell me what to do, and she's not my manager. What color is my skin?" Then Ms. Hom turned to the Plaintiff and said, "Oh, sorry J.J." (addressing Plaintiff). The second instance was when in response to Plaintiff raising awareness that employees should not breathe chlorine their entire eight-hour shift, Supervisor Brian Cornelius stated to group leader Dave Rahn, "I want that black mother fucker out of my area." These acts are reasonably related to Plaintiff's EEOC complaint. Therefore, the Court may consider these acts in Plaintiff's complaint. Furthermore, these comments are sufficient to show a subjective and objective claim for hostile work environment.

Plaintiff has provided evidence of numerous instances showing hostility based on race pursuant to his supervisors comments or actions sufficient to overcome summary judgment.

Plaintiff has made a *prima facie* showing that he was subjected to unwelcome verbal and physical harassment sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that Plaintiff's manager's conduct toward Plaintiff was severe and pervasive so as to create a hostile work environment. Thus, Defendant's Motion for Summary Judgment regarding Plaintiff's hostile work environment claim is denied.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 42) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is granted with regard to Plaintiff's 42 U.S.C. § 1981 racial discrimination claim. Thus, Plaintiff's 42 U.S.C. § 1981 racial discrimination claim is dismissed based on Defendant's assertion and Plaintiff's concession that this claim is unsustainable against the United States Postal Service.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is denied with regard to Plaintiff's Title VII disparate treatment and hostile work environment claims.

DATED this 23rd day of March, 2007.

_____
Mary H. Murguia
United States District Judge

- 14 -